852 F.2d 1293
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
STERLING DRUG INC. and Cook-Waite Laboratories, Inc.,
Plaintiffs-Appellants,
v.
INTERMEDICS, INC., Carbomedics, Inc., Intermedics
Orthopedics, Inc., Calcitek, Inc. and Dr. Michael
Jarcho, Defendants-Appellees.
 No. 87-1450.
 United States Court of Appeals, Federal Circuit.
 June 17, 1988.
 
 Before MARKEY, Chief Judge, and FRIEDMAN and DAVIS, Circuit Judges.*
 FRIEDMAN, Circuit Judge.
 
 DECISION
 
 1
 The judgment of the United States District Court for the Western District of Texas, dismissing all eight counts of the appellants' complaint, including two counts of patent infringement, is affirmed.
 
 OPINION
 
 2
 * Hydroxylapatite is a naturally-occurring mineral and is the major mineral component of human teeth and bones. United States Patent No. 4,097,935 (the '935 patent), which is assigned to the appellant Sterling Drug Inc., discloses a ceramic hydroxylapatite composition, and the process for making the ceramic, which is used in dentistry and orthopedics. United States Patent No. 4,551,135 (the '135 patent), also assigned to Sterling Drug Inc., discloses a syringe for mixing and extruding a plasticizable mixture such as the ceramic hydroxylapatite.
 
 
 3
 Dr. Jarcho, the named inventor on the '935 patent, worked for Sterling Drug Inc., from 1969 to 1979, when he left to join the appellee Carbomedics, Inc., and later joined the appellee Intermedics, Inc. Appellants Sterling Drug Inc. and its wholly owned subsidiary Cooke-Waite Laboratories, Inc. (hereinafter Sterling) filed a complaint alleging misappropriation of trade secrets relating to hydroxylapatite, misrepresentation in advertising in violation of section 43(a) of the Lanham Act, breach and inducing the breach of Dr. Jarcho's employment contract with Sterling Drug, tortious interference with Sterling Drug's current and prospective contractual relations, unfair competition, unjust enrichment, and infringement of the '935 and '135 patents. The appellees counterclaimed for a declaratory judgment of patent invalidity, noninfringement and unenforceability.
 
 
 4
 Following a jury trial, the jury answered special interrogatories in which it ruled for the appellees on the nonpatent claims and determined that the '935 patent was valid but not infringed and that the '135 syringe patent was invalid and not infringed. We affirm these determinations, except that we find it unnecessary to consider whether the '135 patent was infringed.
 
 II
 
 5
 The appellants mount a shotgun attack on the district court's decision, asserting 25 separate grounds (contained in nine separate points in their opening brief) upon which the district court allegedly erred. Many of the contentions involve an attempt to retry the case in this court. We reject those contentions because the jury's factual determinations that the appellants challenge are supported by substantial evidence. The other rulings of the district court that the appellants challenge either were legally correct or involved a proper exercise of the court's discretion.
 
 
 6
 A. The district court correctly denied the appellants' motion for judgment n.o.v. or for a new trial on the patent infringement, trade secret misappropriation, breach of contract, Lanham Act, and unfair competition claims.
 
 
 7
 1. a. The '935 Patent. Sterling argues that it proved literal infringement of the '935 patent by its expert testimony and that the appellees presented no "substantial evidence of non-infringement." The burden was on Sterling to prove infringement; the accused infringer is not required to prove non-infringement. Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 218 USPQ 871 (Fed.Cir.1983).
 
 
 8
 The evidence on infringement was in conflict. There was evidence that could have led the jury to reject the appellants' expert testimony on credibility grounds. The appellees presented evidence that their product and process did not fall within the claims of the '935 patent. That evidence included testimony that the accused process did not produce a gelatinous precipitate, and that the resultant product did not have the claimed density and was actually produced by the prior art techniques. We cannot say that the jury's determination of non-infringement was without substantial evidentiary support or that the district court abused its discretion in denying a new trial on the patent infringement issues.
 
 
 9
 Sterling challenges the district court's application of prosecution history estoppel to bar a finding of infringement under the doctrine of equivalents. During prosecution of the '935 patent, the term "gelatinous" was added to distinguish the precipitate in the "Jarcho process from similar processes where material was powdered prior to sintering or powdered and compacted prior to sintering." Sterling Drug Inc. v. Intermedics Inc., 3 USPQ2d 1467, 1469 (W.D.Tex.1987). As the district court stated:
 
 
 10
 The inclusion of the recitation "heating said gelatinous precipitate" was crucial to obtaining the allowance of all the process claims. The prosecution shows that the meaning Sterling ascribed to this phrase at that time was one of initially producing a cohesive gel material by precipitation and then sintering the material while it remains in that cohesive state.
 
 
 11
 Id. The court found that the '935 product claims
 
 
 12
 were allowed over the prior art only after: 1) the claims were amended to limit the density to "a density greater than approximately 98 percent of the theoretical density of hydroxylapatite and being further characterized by the absence of pores," 2) the personal interview at which the Examiner was shown photomicrographs illustrating the total absence of pores in the ceramic material, and 3) receipt of the Jarcho articles which emphasized the pore-free nature of the Jarcho ceramic.
 
 
 13
 Id. at 1470.
 
 
 14
 The district court justifiably concluded that these limitations were critical to the issuance of the '935 patent and preclude a finding that the appellees infringed under the doctrine of equivalents.
 
 
 15
 b. The '135 Patent. The jury determined that claims 1 and 35 of the '135 patent were anticipated and that claims 2, 3, 31, 32, and 33 would have been obvious. Claims 1 and 31 are the only independent claims in issue. The district court did not err in denying Sterling's motion for judgment n.o.v. on the validity of the '135 patent.
 
 
 16
 Sterling argues that the jury's determination that claim 35 was anticipated cannot stand because claim 35 is dependent upon claim 33, which was found to be obvious. It relies upon RCA Corp. v. Applied Digital Data Systems, Inc., 730 F.2d 1440, 1446, 221 USPQ 385, 389 (Fed.Cir.), cert. dismissed, 468 U.S. 1228 (1984), which stated that "[s]ince claim 3 of the Cole patent is dependent upon claim 2, which is not anticipated, claim 3 cannot be anticipated." Unlike RCA, however, these were jury determinations rather than bench findings. It is well established that an inconsistent jury verdict does not require reversal when the inconsistency can be reconciled. Allen Organ Co. v. Kimball Int'l, Inc., 839 F.2d 1556, 1563, 5 USPQ2d 1769, 1774 (Fed.Cir.1988) (and cases cited therein), where the court noted that "inconsistent jury findings or verdicts [are] not unique to patent law."
 
 
 17
 Furthermore, counsel for Sterling expressed concern at trial that, if the jury verdict should be in conflict, "when it's detected[,] and with the jury still here in the courthouse, that it's ordinarily sent back for resolution of the conflict." The court ensured that Sterling would be safeguarded by reading the answers to the interrogatories while counsel recorded them on their own copies. The court explicitly stated that before it dismissed the jury, counsel could address any inconsistencies. Sterling did not object to the determinations as inconsistent, thus indicating that the inconsistency now complained of was not so glaring as to be irreconcilable. Unlike the situation in RCA, the inconsistency here is reconcilable, for "anticipation is the epitome of obviousness," (In re Fracalossi, 681 F.2d 792, 215 USPQ 569 (CCPA 1982)), and there is no reason to return the case for a jury conclusion that claim 35 sets forth an invention that would have been obvious.
 
 
 18
 Sterling challenges the court's refusal to admit into evidence, in connection with its cross-examination of the appellees' witness, information the appellees had supplied to the Food and Drug Administration. Sterling asserts that this information proved that the accused infringing hydroxylapatite fell within the density requirements in claim 1 of the '935 patent. The court excluded the evidence on the grounds that the document went beyond the scope of direct examination and that the witness had not seen the document and had no personal knowledge of it. The ruling was not erroneous.
 
 
 19
 2. The jury determined that only four of Sterling's alleged trade secrets were in fact trade secrets: copies of Dr. Jarcho's laboratory notebooks, a "standard preparation" document outlining the steps of hydroxylapatite synthesis, and Sterling's hydroxylapatite product specifications and test procedures. The jury further determined, however, that the appellees had not misappropriated those four trade secrets. Substantial evidence supports the latter determinations. Because the breach of employment contract claims were based upon the alleged misappropriation of trade secrets, the court properly declined to grant judgment n.o.v. on those claims.
 
 
 20
 3. Sterling's Lanham Act claim focuses upon language in the appellees' advertising which suggests that the appellees, rather than Sterling Drug, had "developed a remarkable synthetic bone substitute." Sterling points to testimony that this advertising was unfair, false, misleading, and seriously damaged Sterling. There was, however, contrary evidence to show that the appellees had developed a synthetic bone substitute, so that this advertising was truthful. Since substantial evidence supports the jury determination that the appellees' advertising was truthful, the district court properly denied judgment n.o.v. on this claim.
 
 
 21
 4. The unfair competition claim rests upon alleged misappropriation of trade secrets, product disparagement, and enticing Sterling Drug's sales representatives into the appellees' employ. We have already upheld the jury's determination that there was no misappropriation of trade secrets. To show the other alleged acts of unfair competition, Sterling relies upon testimony that the appellees filed unfounded complaints with the Food and Drug Administration and enticed Sterling sales representatives to leave their employers. We cannot say that the jury erred in concluding that this testimony did not establish unfair competition or that the district court erred in denying judgment n.o.v. on the unfair competition claim.
 
 
 22
 B. Sterling alleges that the special interrogatories submitted to the jury were legally erroneous and denied Sterling a fair trial on the issue of literal infringement of the '935 patent and its right to a jury trial on the issue of equivalents. We have stated, in a challenge to the submission of general rather than special interrogatories, that:
 
 
 23
 District courts have broad authority and discretion in controlling the conduct of a trial. That authority extends to the form by which juries return verdicts, Fed.R.Civ.P. 49, and will not be interfered with unless an abuse of discretion is shown.
 
 
 24
 Railroad Dynamics, Inc. v. A. Stucki Co., 727 F.2d 1506, 1515, 220 USPQ 929, 938 (Fed.Cir.), cert. denied, 469 U.S. 871 (1984). Sterling has not shown that the district court abused its discretion in submitting the special interrogatories to the jury. Sterling has also failed to show that, in view of the jury instructions, any possible defect in the interrogatories constituted prejudicial error or an abuse of discretion.
 
 
 25
 C. Lastly, Sterling contends that the district court abused its discretion in awarding costs against it. It argues that the appellees were not the prevailing parties (1) because more than two years before trial some of the appellees' counterclaims were dismissed, and (2) because Sterling prevailed on the issue of the validity of the '935 patent since the appellees failed to prove inequitable conduct. The appellees, however, were the prevailing parties because the district court dismissed all of the counts in Sterling's complaint. The district court did not commit legal error or abuse its discretion in awarding costs to the appellees.
 
 
 
 *
 Because of illness, Judge Davis took no part in the decision of this case