**HUGHES AIRCRAFT
COMPANY, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

No. 426–73.

United States Claims Court.
Aug. 10, 1988.

Sheldon Karon, Victor G. Savikas, Lawrence A. Wojcik, Thomas D. Rosenwein, Sharon R. Barner, Chicago, Ill., for plaintiff.

Thomas J. Byrnes, with whom were Asst. Atty. Gen., Richard K. Willard and Vito J. DiPietro, Washington, D.C., for defendant. Stephen J. McHale, Dept. of Justice, of counsel.

## OPINION

TURNER, Judge.

Hughes Aircraft Company, owner of U.S. Patent No. 3,758,051 (the Williams patent),[1] claims entitlement to compensation pursuant to 28 U.S.C. § 1498 by reason of defendant's alleged use of the patent in 108 spacecraft. Hughes seeks damages in excess of three billion dollars.

Hughes filed its complaint in 1973; since then a lengthy, complex and costly litigation has ensued at trial and appellate levels. In 1983, the United States Court of Appeals for the Federal Circuit held that the Williams patent was valid and infringed by specific originally accused spacecraft and remanded the case to this court for a determination of damages owed to Hughes. *Hughes Aircraft Co. v. United States*, 717 F.2d 1351 (Fed.Cir.1983). Trial of the current phase of the litigation, involving a determination of damages for uses already adjudged to constitute infringement and a determination of liability and damages for Hughes' newer, additional allegations of infringement, began on February 2, 1988.

On January 27, 1988, defendant filed a motion pursuant to 28 U.S.C. § 2515(b) for a new trial on the issue of validity of the Williams patent. Defendant asserts that a new trial is warranted because newly discovered evidence renders the patent invalid pursuant to 35 U.S.C. §§ 102(a) and 103.

This opinion addresses the motion for a new trial and supplements the decision rendered from the bench on June 16, 1988 (trial transcript, pp. 6541–56) and paragraph 2 of an order entered June 22, 1988 memorializing the decision.

### I

The new evidence that defendant has discovered,[2] and on which it bases the new trial motion, is an article written by R.G. McCarty entitled "Designing small space payloads" and appearing in the May 1959 issue of *Astronautics* magazine. The article discusses the need to reduce the costs of space research by designing experiments and equipment that "exploit ... the unique

---

1. The Williams patent deals with an attitude control system for spin-stabilized spacecraft which was first used in the early 1960's in the communications satellites SYNCOM II and SYNCOM III.

2. Defendant's attorneys first became aware of the evidence in August 1987 when an attorney for a corporation engaged in other litigation with Hughes informed defendant of its existence.

properties of the space environment." McCarty describes various experiments at the U.S. Naval Ordinance Test Station, some completed and others in the planning stages, that were conceived with these principles in mind. The first experiment described involves a spin stabilized optical telescope designed to scan for Air Force lunar probes. He then discusses a scanner "under development" that includes a precession system.[3] Precession in such a scanning space vehicle would be accomplished by a magnet which would interact with the earth's magnetic field. This interaction would impart a torque to the system, reorienting the spacecraft. McCarty then states: "There are plans to carry this development further if preliminary results justify detailed exploration of some particular portions of the sky. [A designated] drawing ... illustrates the design of a controllable spinning telescope."

McCarty expands on this thought, under a subheading entitled "Ground Control Test." He states:

Initially, it is planned to test this device without attempting to vary the spin (or telescope) axis. The data, then, will give detailed information on only a small circular portion of the sky—a portion equal to the total field of view. Upon completion of that phase, *an attempt will be made* to include a precession system that can be controlled from the ground. The precession motor under design uses a high pressure gas emitted from a nozzle parallel to, but offset from, the spin axis. To achieve precession, small short bursts of thrust are delivered at the right time in each spin cycle to cause precession in the desired direction. [Emphasis added.]

McCarty then adds: "Achievement of this goal is not expected to be easy."

## II

Defendant seeks a new trial pursuant to 28 U.S.C. § 2515(b) which states:

[The United States Claims Court], at any time while any suit is pending before it, or after proceedings for review have been instituted, or within two years after the final disposition of the suit, may grant the United States a new trial and stay the payment of any judgment upon satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done the United States.

Defendant argues that it need show at this juncture only a *prima facie* case (albeit by clear, convincing and unequivocal proof) that an injustice will be done unless the defendant is granted a new trial on the issue of the validity of the Williams patent. Defendant cites *Purcell Envelope Co. v. United States*, 48 Ct.Cl. 66, 70, (1913); *Goodrich v. United States*, 48 Ct.Cl. 61, 64 (1913); and *Henry v. United States*, 15 Ct.Cl. 162, 165 (1879) as authority for the proposition that it need only show a *prima facie* case. The more recent precedent, however, makes no mention of a *prima facie* standard. *See Badowski v. United States*, 143 Ct.Cl. 23, 25–26 (1958) (defendant must show by clear, unequivocal and convincing proof that an injustice has been done before a new trial will be granted). *See also Young v. United States*, 95 U.S. (5 Otto) 641, 24 L.Ed. 467 (1877) (motion for a new trial should be granted "if the evidence submitted ... is *sufficient* to satisfy that court that 'fraud, wrong, or injustice' had been done to the United States") (emphasis added).

■ *Badowski* is more recent precedent and better reflects the statutory language that a new trial be granted "upon satisfactory evidence." It therefore announces the appropriate standard for review: the defendant must show by clear, convincing and unequivocal proof that an injustice has been done to the United States before the defendant's motion for a new trial will be granted.

---

**3.** Precession was ably described by Judge Colaianni in the following manner: "The orientation of a spinning body is not affected by the translational motion of the body. It is affected only by torques, which are forces applied to the body which do not act through its center of mass. A spinning body will reorient its spin axis if a torque is applied to it. The process of reorientation is known as precession." *Hughes Aircraft Co. v. United States*, 640 F.2d 1193, 1212 (Ct.Cl. 1980).

## III

The defendant makes two arguments in its motion for a new trial. First, the defendant argues that the McCarty article anticipates the Williams patent, rendering it invalid pursuant to 35 U.S.C. § 102(a). Second, defendant asserts that even if there is no anticipation, Williams' claimed invention would have been obvious in light of McCarty and other relevant prior art and is therefore invalid pursuant to 35 U.S.C. § 103.

### A. ANTICIPATION

Title 35 U.S.C. § 102(a) states:

A person shall be entitled to a patent unless—(a) the invention was known or used by others in this country, or ... described in a printed publication ... before the invention thereof by the applicant for patent....

Plaintiff does not dispute that the McCarty article is prior art and that it appeared in a printed publication before Williams conceived of his invention. Plaintiff does claim that McCarty is a limited disclosure, is not enabling and neither expressly nor inherently discloses every element in the claims of the Williams patent. Defendant argues that every element in the claims is expressly disclosed in McCarty, and, in the alternative, that any element not expressly disclosed is inherently disclosed. Defendant also states that McCarty is enabling.

■ It is well settled that in order to anticipate a claim and render it invalid, a single prior art reference must expressly or inherently disclose each and every element as set forth in the claim. *Constant v. Advanced Micro Devices, Inc.*, 848 F.2d 1560, 1570 (Fed.Cir.1988); *Verdegaal Brothers, Inc. v. Union Oil Co.*, 814 F.2d 628, 631–33 (Fed.Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987); *Structural Rubber Products Co. v. Park Rubber Co.*, 749 F.2d 707, 715–16 (Fed.Cir.1984). The prior art reference must also be enabling, placing the allegedly disclosed subject matter in the possession of the public. *Constant,* at 1569; *Akzo N.V. v. United States International Trade Commission*, 808 F.2d 1471, 1479 (Fed.Cir. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 2490, 96 L.Ed.2d 382 (1987). It is impermissible to combine prior art references to build an anticipation rejection. *In re Donohue,* 766 F.2d 531, 534 (Fed.Cir.1985); *Studiengesellschaft Kohle, m.b.h. v. Dart Industries, Inc.,* 726 F.2d 724, 726–27 (Fed. Cir.1984). Further, reference may be made to more than one item of prior art only to determine whether the single prior art reference containing each element of the claim is enabling. *In re Donohue,* 766 F.2d at 533–34; *In re Marshall,* 578 F.2d 301, 304 (C.C.P.A.1978).

■ Defendant argues that each element of claim 1 of the Williams patent[4] is expressly disclosed in the McCarty article. However, it is clear that the McCarty article does not expressly disclose each element as alleged by defendant. McCarty does describe a spinning telescope with a precession system, which uses high pressure gas emitted from a nozzle parallel to but offset from the spin axis to achieve

---

**4.** Claim 1 is representative of the three independent claims. *Hughes Aircraft Co. v. United States,* 717 F.2d 1351, 1355 (Fed.Cir.1983). That claim reads:

1. Apparatus comprising:
a. a body adapted to spin about an axis;
b. fluid supply means associated with said body;
c. a valve connected to said fluid supply means;
d. fluid expulsion means disposed on said body and coupled with said valve and oriented to expel said fluid substantially along a line parallel to said axis and separated therefrom;

e. means disposed on said body for providing an indication to a location external to said body of the instantaneous spin angle position of said body about said axis and the orientation of said axis with reference to a fixed external coordinate system;
f. and means disposed on said body for receiving from said location control signals synchronized with said indication;
g. said valve being coupled to said last-named means and responsive to said control signals for applying fluid to said fluid expulsion means in synchronism therewith for precessing said body to orient said axis in a predetermined desired relationship with said fixed external coordinate system.

precession. It is therefore certainly arguable (and is assumed) that the McCarty article expressly discloses elements a, b, c and d of the Williams claim. The serious flaw in defendant's argument arises upon consideration of elements e, f and g of the claim. A system "controlled from the ground" delivering "short bursts of thrust ... at the right time in each spin cycle to cause precession in the desired direction" is simply not an express disclosure of elements e, f and g. McCarty does not expressly anticipate the Williams claim.[5]

Defendant next argues that any elements not expressly disclosed in the McCarty article are inherently disclosed, and that the Williams patent is therefore invalid pursuant to the inherency doctrine. Defendant cites *Verdegaal Brothers, Inc. v. Union Oil Co.*, 814 F.2d 628, 631–33 (Fed.Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987) and *Tyler Refrigeration v. Kysor Industrial Corp.*, 777 F.2d 687, 689–90 (Fed.Cir.1985) as authority for its argument. In these cases, an unstated element that was "inherent" in the allegedly anticipating reference existed as a matter of scientific fact. It flowed naturally from the elements expressly disclosed in the prior art reference, whether anyone knew it existed or not. The mere fact that a prior art reference failed to mention something that undeniably existed is of no consequence, for the element must have been there.

■ The Williams claim is not anticipated under the doctrine of inherency. The need for element e, a "means on said body for providing an indication to a location external to said body of the instantaneous spin angle position of said body about said axis and the orientation of said axis with reference to a fixed external coordinate system," is an idea that is a product of reasoning and insight. It does not inherently exist in the claim as a matter of scientific fact because other elements are present. It does not flow undeniably and irrefutably from the express disclosures of McCarty whether anyone recognizes it or not. It is only present by virtue of the intervening step of human perception, awareness and understanding. This case is different from *Verdegaal* and *Tyler* and is not controlled by them. The McCarty article does not expressly or inherently disclose each element of the Williams claim and therefore does not anticipate it.

In its brief, defendant states that "the means for determining when in the spin cycle to fire the jet was a simple matter, well-known to persons of ordinary skill in the art in 1959." Defendant then concludes: "McCarty's disclosure that precession in the desired direction can be attained implies that information about spin axis orientation and instantaneous spin angle position is required and available." Reply Brief at 10. Defendant's expert states that, "anyone skilled in the art as an aerospace engineer concerned with synchronous telecommunications satellites in 1960, could take McCarty's description, apply knowledge available to those in the art, and construct a system that would correspond to that designed by Williams." Second Declaration of Dr. Kaplan, June 2, 1988, ¶ 5, pp. 4–5.

It appears that defendant would have one of ordinary skill in the art study the McCarty article and deduce from it ele-

---

5. In oral argument, defendant stated, with respect to element f of the claim, that "[s]ynchronism was wiped out by the 1983 decision of ... the Federal Circuit." Defendant also stated that "all that is required under the Federal Circuit's decision is that a signal be received which results in the firing of the jet at the right time in the spin cycle." Trial transcript, pp. 6492–93. Defendant is incorrect when it states that synchronism was "wiped out" by the Federal Circuit. The Federal Circuit held that the substitution of a post-Williams technological advance does not avoid infringement, where the accused device performs substantially the same function in substantially the same way to obtain substantially the same result. *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1363–66 (Fed.Cir. 1983). The reasoning of the Federal Circuit, that the substitution of a post-Williams technological development may still result in infringement pursuant to the doctrine of equivalents, is not transferable to the anticipation analysis. The McCarty article was a pre-Williams prior art reference and is unaffected by post-Williams technological advances. Accordingly, the "synchronism" requirement in element f of the claim was not "wiped out" by the Federal Circuit for purposes of an anticipation analysis.

ments appearing in the Williams claims that were not expressly disclosed by McCarty. As stated in *Structural Rubber Products Co. v. Park Rubber Co.*, 749 F.2d 707, 716 (Fed.Cir.1984) (quoting *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed.Cir.1983)):

> [It is argued that] anticipation may be shown by less than 'complete anticipation' if one of ordinary skill may in reliance on the prior art 'complete the work required for the invention', and that 'it is sufficient for an anticipation "if the general aspects are the same and the differences in minor matters is only such as would suggest itself to one of ordinary skill in the art." ' Those statements relate to obviousness, not anticipation.

*See also Jamesbury Corp. v. Litton Industrial Products, Inc.*, 756 F.2d 1556, 1560 (Fed.Cir.1985).

In sum, the McCarty article does not expressly or inherently anticipate Williams' claims. Moreover, clearly, McCarty is not enabling. Even the author agrees; his article frankly states that achievement of his goal of a ground controlled precessible telescope "is not expected to be easy." McCarty did provide a concept, but as Chief Judge Markey states: " 'Concepts' do not anticipate." *Panduit Corp. v. Dennison Manufacturing Co.*, 774 F.2d 1082, 1101 (Fed.Cir.1985), *vacated on other grounds*, 475 U.S. 809, 106 S.Ct. 1578, 89 L.Ed.2d 817 (1986), *on remand*, 810 F.2d 1561 (Fed.Cir. 1987), *cert. denied*, 481 U.S. 1052, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987).

## B. OBVIOUSNESS

Title 35 U.S.C. § 103 states, in pertinent part:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

Defendant argues that even if the McCarty article does not anticipate Williams, the Williams patent is still invalid pursuant to 35 U.S.C. § 103. Defendant states that McCarty, which couples ground control with a precessible space vehicle, provides "a road map to a precession system which would correspond to the one covered by the claims in the Williams patent." Plaintiff counters by arguing that McCarty adds nothing to the prior art not already considered by the Federal Circuit, and that objective evidence of non-obviousness makes it clear that the Williams invention must survive a § 103 attack.

When engaging in an obviousness inquiry, a court must determine whether the claimed invention *as a whole* would have been obvious at the time the invention was made to one of ordinary skill in the art. *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1383 (Fed.Cir. 1986) *cert. denied*, 480 U.S. 947, 107 S.Ct. 1606, 94 L.Ed.2d 792 (1987); *In re Fine*, 837 F.2d 1071, 1073–74 (Fed.Cir.1988). A court must apply a four factor test, making sure that each factor is considered before a final decision is made. These four factors are (1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, (3) the level of ordinary skill in the art and (4) objective evidence of non-obviousness (secondary considerations). *Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–94, 15 L.Ed.2d 545 (1966); *Custom Accessories, Inc. v. Jeffrey–Allan Industries, Inc.*, 807 F.2d 955, 958 (Fed.Cir.1986); *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 872 (Fed.Cir.1985). Each prior art reference must be evaluated in its entirety, and all the prior art must be evaluated as a whole. *Panduit Corp. v. Dennison Manufacturing Co.*, 774 F.2d 1082, 1093–94 (Fed.Cir. 1985), *vacated*, 475 U.S. 809, 106 S.Ct. 1578, 89 L.Ed.2d 817 (1986), *on remand*, 810 F.2d 1561 (Fed.Cir.1987), *cert. denied*, 481 U.S. 1052, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987).

### 1. Level of Ordinary Skill in the Art

In *Hughes Aircraft Co. v. United States*, 215 U.S.P.Q. 787, 804 (Ct.Cl.Trial Div.1982),

Trial Judge Colaianni found that "the level of ordinary skill in this art was that of an aerospace engineer practicing in 1960 with some exposure to the problems of synchronous orbit telecommunication satellites." The defendant (Reply Brief at 15) and the plaintiff (Response at 30) agree that this is an appropriate finding and should be applied in the adjudication of this motion. Judge Colaianni's finding of the level of ordinary skill in the art is adopted and applied.

### 2. Scope and Content of Prior Art

Defendant correctly points out that in this § 103 analysis, the McCarty article cannot be analyzed in isolation. McCarty must be considered as one piece of prior art among many relevant prior art references. With this in mind, the following are the most important and significant prior art references in this case.

a. McLean: In its 1983 decision, the Federal Circuit stated that "[t]he trial judge found, and the parties agree, that McLean is the most pertinent prior art." *Hughes Aircraft Co. v. United States,* 717 F.2d 1351, 1359 (Fed.Cir.1983). The Federal Circuit also stated that the McLean space vehicle is

> a spin-stabilized, target-seeking space vehicle having a jet motor on its periphery. The motor, controlled by an infrared sensor, automatically precessed the vehicle to keep its spin axis pointed toward the target.

> The McLean vehicle for steering a collision course to a target is self-contained and self-guiding. When the target is aligned with the vehicle's spin axis, photodetector 22 detects a constant infrared radiation, producing a constant signal. If the target moves from alignment, detector 22 provides an alternating signal, to fire precessing jet 16 at the point in

the vehicle's spin cycle that will precess the spin axis back toward the target. *Id.* at 1354.

b. Rosen and Williams: Trial Judge Colaianni also concluded that the Rosen and Williams patent was an important prior art reference. *Hughes Aircraft Co. v. United States,* 215 U.S.P.Q. 787, 800 (Ct.Cl. Trial Div.1982). Rosen, et al. discloses a spin stabilized satellite which is ground controlled by "de-spinning" the satellite, changing its orientation and then starting the spin anew.

c. Schlesman: The Schlesman patent, U.S. Patent No. 2,852,208, discloses a gun launched spinning missile which is equipped with a means for disclosing the rotational position and declination angle of the missile to a ground controller. The ground controller would then be able to determine when steering charges, located on the side of the missile, should be fired to achieve the desired orientation of the missile in flight.[6]

### 3. Differences Between Prior Art and Claims at Issue

The third prong in the obviousness test involves a determination of the differences between the prior art and the claims at issue. The starting point in this analysis is the 1983 opinion of the Federal Circuit, which discusses the differences between McLean and Williams. According to the Federal Circuit:

> [t]he space vehicle of McLean maintains a collision course with a target, whereas the Williams satellite maintains its spin axis in an orientation parallel to the earth's spin axis while in synchronous orbit around the earth. The former, under internal control alone, automatically tracks a target, whereas the latter is controlled from the ground. Though both devices use a precessing jet on the periphery, pulsed synchronously with the spin cycle for changes in orientation, the

---

6. Neither the Federal Circuit nor Trial Judge Colaianni concluded that Schlesman was among the most probative pieces of prior art for purposes of § 103 obviousness inquiry. The defendant is now arguing that Schlesman is of central importance to the resolution of this motion. McCarty, being newly discovered, was not available to the Federal Circuit or to the trial judge and does affect the determination of which references are most significant to a § 103 analysis. This court now concludes that Schlesman is entitled to careful scrutiny as a relevant and important prior art reference.

differences in function lead to significant structural differences.

*Hughes Aircraft Co. v. United States,* 717 F.2d at 1359–60. The Federal Circuit also stated that:

> [W]e nonetheless detect no error in the finding that McLean does not provide an indication of the orientation of his spin axis with reference to a fixed external coordinate system, when a spin axis is out of alignment with the target star. Unlike Williams, such indication is unnecessary for McLean to accomplish precession.

*Id.* at 1360. To the Federal Circuit, a crucial distinction between McLean and Williams is that McLean, as a target-seeker, would have no reason to disclose the orientation of its spin axis to a fixed external location (element e of claim 1 of Williams). McCarty, on the other hand, is not a target-seeking vehicle, but a "ground-controlled precessible telescope." McCarty *conceivably* would need to disclose the orientation of its spin axis to a fixed external location; such disclosure would not be inconsistent with what McCarty did expressly mention.[7] Plaintiff's statement that McCarty is a mere rehash of old arguments and adds nothing new and significant to the body of prior art is simply incorrect. McCarty does add something.[8] The question is whether it adds enough to warrant the conclusion that the Williams invention would have been obvious to one of ordinary skill in the art at the time the invention was made.

Defendant stresses the fact that McCarty disclosed that the precessible telescope would achieve precession by delivery of short bursts of thrust "at the right time in each spin cycle."[9] To defendant, this is a key disclosure that "indicated to persons of ordinary skill in the art what information was needed and the prior art showed how it could be obtained." (Defendant's Reply Brief at 11–12). Defendant is mistaken in its belief that McCarty's "at the right time in each spin cycle" is a disclosure of major importance. Defendant's expert states that the McLean space vehicle taught that a spinning body should be precessed by timed firing jets (Second Declaration of Dr. Kaplan, June 2, 1988 ¶ 6, p. 7). McCarty merely states what the McLean self-contained targeting vehicle teaches: there is a "right time" in the spin cycle to fire the jets in order to accomplish precession of a spinning space vehicle.[10] It is therefore arguable that McCarty only adds the concept of ground control to a precessible spinning space vehicle.

Defendant argues that McCarty and Schlesman in combination disclose all that Williams did and render Williams obvious and invalid. Trial transcript, p. 6501. The Federal Circuit has held that for a combination to be an obvious one, there must have been objective teaching in the prior art or knowledge available to one with ordinary skill in the art suggesting that the teachings of the prior art references be combined. *In re Fine,* 837 F.2d 1071, 1074 (Fed.Cir.1988). The claimed invention need not be expressly suggested in any one or all references. "Rather, the test is what the combined teachings of the references

---

**7.** On the other hand, ground controlled precession of the telescope by trial and error until it pointed to an object worthy of study would be equally consistent with McCarty's proposed experiment.

**8.** But see note 10, *infra.*

**9.** "Right time in each spin cycle" may well have meant simply 90 degrees from the desired direction of precession, in accordance with long known principles of physics. At any rate, one can only speculate about the author's meaning; he did not explain.

**10.** McCarty's drawing of his "ground-controlled precessible telescope" is almost an exact replica of the McLean space vehicle. According to

plaintiff's expert, McCarty, who was employed at the U.S. Naval Ordinance Test Station (NOTS) when he wrote the article, worked for William McLean, the inventor of the McLean space vehicle and the Director of NOTS. Bryson Declaration, May 5, 1988, ¶ 12, pp. 3–4. Peter G. Wilhelm, Director of the Naval Center for Space Technology at the Naval Research Laboratory, called as a Government expert on state-of-the-art in the aerospace field at pertinent times (trial transcript, pp. 6583–7102), testified with respect to McCarty that given McLean: "There was nothing [new] really. No big revelation there." *Id.,* p. 7101.

would have suggested to those of ordinary skill in the art." *Cable Electric Products, Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1025 (Fed.Cir.1985) (quoting *In re Keller*, 642 F.2d 413, 425 (C.C.P.A.1981)). It is impermissible to disregard portions of a prior art reference that teach away from an invention. *Akzo, N.V. v. United States International Trade Commission*, 808 F.2d 1471, 1481 (Fed.Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 2490, 96 L.Ed.2d 382 (1987); *W.L. Gore & Associates v. Garlock, Inc.*, 721 F.2d 1540, 1550 (Fed.Cir.1983), *cert. denied*, 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984). And, at all costs, the mistake of picking random bits of various prior art references and employing them as a "mosaic to recreate a facsimile of the claimed invention" must be avoided. *W.L. Gore*, 721 F.2d at 1552.

Defendant is arguing that McCarty's statement that a precessible space vehicle might be ground controlled would naturally have lead one of ordinary skill in the art to combine McCarty with a portion of Schlesman. It is true that McCarty does disclose a "ground-controlled" precessible spinning space vehicle and Schlesman does disclose a spinning missile equipped with a means for disclosing its rotational position and declination angle to a ground controller. Schlesman's method of steering, however, involved the firing of charges located on the side of the missile (apparently in a direction perpendicular to the spin axis), while McCarty's involved the emission of high pressure gas offset from and parallel to the spin axis. It is by no means clear that the prior art would have suggested the combination or that one with ordinary skill in the art would naturally have taken a portion of Schlesman and disregarded the rest.[11] This case does present a closer question on obviousness than the one presented by McLean. Either way, a § 103

determination cannot be made until all factors of the four part test are considered. *Simmons Fastener Corp. v. Illinois Tool Works, Inc.*, 739 F.2d 1573, 1574–75 (Fed. Cir.1984), *cert. denied*, 471 U.S. 1065, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985).

### 4. *Secondary Considerations*

The fourth consideration in an obviousness inquiry involves the study of objective evidence, so-called "secondary considerations." Secondary considerations include evidence of commercial success, satisfaction by the invention of long-felt but unresolved need, failure of others to solve the problem and copying. *Custom Accessories, Inc. v. Jeffrey–Allan Industries*, 807 F.2d 955, 960 (Fed.Cir.1986). Secondary considerations must be considered before a decision on obviousness is reached. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed.Cir.1983). Furthermore, secondary considerations may be the most revealing evidence available, *Ashland Oil, Inc., v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 306 (Fed. Cir.1985), *cert. denied*, 475 U.S. 1017, 106 S.Ct. 1201, 89 L.Ed.2d 315 (1986); *Custom Accessories, Inc.*, 807 F.2d at 960; *W.L. Gore & Associates v. Garlock, Inc.*, 721 F.2d 1540, 1555 (Fed.Cir.1983), *cert. denied*, 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed. 2d 107 (1984), and are entitled to great weight when the evidence is strong. *Simmons Fastener Corp.*, 739 F.2d at 1576. *See also Panduit Corp. v. Dennison Manufacturing Co.*, 810 F.2d 1561, 1569 (Fed. Cir.), *cert. denied*, 481 U.S. 1052, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987) (" 'In appraising an inventor's contribution to the art ... the most reliable test is to look at the situation before and after it appears' ") (quoting *Safety Car Heating & Lighting Co. v. General Electric Co.*, 155 F.2d 937, 939 (2nd Cir.1946) (L. Hand, J.)).

---

**11.** A non-obvious combination of elements from various prior art references is clearly patentable.

The patentability of such combinations is of ancient authority. *See, e.g., Prouty v. Draper*, 41 U.S. (16 Pet.) 336, 341 [10 L.Ed. 985] (1842); *Eames v. Godfrey*, 68 U.S. (1 Wall.) 78, 79–80 [17 L.Ed. 547] (1863); *Gill v. Wells*, 89 U.S. (22 Wall.) 1, 25 [22 L.Ed. 699] (1874); *see*

*also* H.T. Markey, *Why Not the Statute?*, 65 J. Pat. Off. Soc'y 331, 333–34 (1983) ("virtually all inventions are 'combinations,' and ... *every* invention is formed of 'old elements'.... Only God works from nothing. Man must work with old elements"). [Emphasis in original.]

*In re Wright*, 848 F.2d 1216, 1220 (Fed.Cir.1988).

In *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1360 (Fed.Cir.1983) the Federal Circuit stated that the following secondary considerations were "uncontested facts":[12]

(1) government's unsuccessful efforts to solve the attitude control problem, despite huge expenditures; (2) belief of experts that the problem could not be solved; (3) a long-felt need filled by the Williams invention; (4) commercial success; (5) government's protracted attempt to obtain title to the Williams patent; and (6) its admissions of non-obviousness during the title dispute.

Defendant argues that McCarty provides "a road map to a precession system which would correspond to the ones covered by the claims in the Williams patent." It has been almost 30 years since Williams conceived of his invention and filed his original patent application, more than 20 years since the patent examiner allowed the claims, and almost 15 years since the patent issued. After this lapse of time, it would be easy for a court to say, with the inventor's claims laid out beside a collection of all relevant prior art references, that a particular combination of elements would have been obvious to one of ordinary skill in the art when the invention was made. As stated in *W.L. Gore & Associates v. Garlock, Inc.*, 721 F.2d at 1553, a court must avoid falling "victim to the insidious effect of a hindsight syndrome wherein that which only the inventor taught is used against its teacher." Secondary considerations, when present, help to avoid the trap of hindsight reconstruction, *Custom Accessories, Inc.*, 807 F.2d at 960; *Atlas Powder Co. v. E.I. DuPont de Nemours & Co.*, 750 F.2d 1569, 1574 (Fed.Cir.1984), and it is difficult to conceive of a case where secondary considerations are stronger than this one. On these facts, even if the first three prongs of the obviousness test presented a close case, the evidence of secondary considerations make it abundantly clear that the Williams invention would not have been obvious to one of ordinary skill in the art at the time the invention was made.[13] Defendant's § 103 attack must fail.

IV

Defendant has failed to prove by clear, unequivocal and convincing proof that an injustice has been done to the United States by the prior determination in this litigation of the validity of the Williams patent. Accordingly, as previously ordered, defendant's motion for a new trial is denied.

---

12. The defendant urges a reexamination of these secondary considerations, apparently hoping that this court would arrive at a different conclusion. Given the language in the Federal Circuit opinion that these facts are "uncontested" and "evidence of non-obviousness," this court is unwilling to reopen the matter.

13. "[A]s with all section 103 decisions, judgment must be brought to bear based on the facts of each case." *In re Wright*, 848 F.2d 1216, 1220 (Fed.Cir.1988).