**ESTATE OF Hylan B. STOLLER, et al., Plaintiffs,**

**v.**

**FORD MOTOR COMPANY, Defendant.**

**ESTATE OF Hylan B. STOLLER, et al., Plaintiffs,**

**v.**

**MERCEDES–BENZ OF NORTH AMERICA, INC., Defendant.**

Nos. 87 C 3729, 87 C 3858.

United States District Court, N.D. Illinois, E.D.

April 18, 1989.

Norman Lettvin, Chicago, Ill., for plaintiffs.

John R. Crossan and JoAnne M. Verplanken, Cook Wetzel & Egan, Chicago, Ill., Steven G. Schumaier, Schumaier Roberts Wessell & Puricelli, Clayton, Mo., Daniel M. Stock, Office of Gen. Counsel, Ford Motor Co., Dearborn, Mich., for Ford Motor Company.

James L. Perkins and Phillip L. Harris, Winston & Strawn, Chicago, Ill., Donald D. Evenson and M. Paul Barker, Barnes & Thornburg, Washington, D.C., for Mercedes–Benz of North America.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiffs, owners of U.S. Patent No. 3,507,538 (Stoller patent) brought suit individually against Ford Motor Company (Ford), Chrysler Corporation (Chrysler) and Mercedes–Benz of North America, Inc. (MBNA) for patent infringement. The cases were consolidated for discovery and assigned to this court. Ford and MBNA[1] now move for summary judgment claiming that the Stoller patent was anticipated and thus is invalid under 35 U.S.C. § 102(b). Alternatively, Ford and MBNA argue that the Stoller patent is invalid under 35 U.S.C. § 103 due to obviousness. For the reasons hereinafter stated, we grant the defendants' motion.

## I. THE STOLLER PATENT

This patent relates to adjustable headrests that can be positioned above seat backrests. The original patent application was filed on December 4, 1967. Following rejection of all eight original claims for obviousness, new claims were added. The prosecution history shows no prior art cited against these claims. The patent was issued on April 21, 1970, with six claims. Plaintiffs allege infringement by defendants of only claims 5 and 6.[2]

In the specific embodiments disclosed and illustrated in Appendix 1, the pillow body 10, constructed with a slot 60 to allow pivotal movement contains a rigid tube. This tube is connected to the pillow with two clamps 20 which are placed around the tube. The clamps are connected to a wooden spacer 22 and fastened using bolts 26 and nuts 27. By adjusting the tightness of these bolts the amount of frictional force between the clamps and the tube is adjusted to the correct level. Consequently, the

1. The suit against Chrysler, No. 87 C 3857, was dismissed with leave to reinstate by November 1988. The action has not been reinstated as of this date.

2. Claims 5 and 6 of the Stoller patent read as follows:

5. A headrest adapted for positioning above the top of a seat backrest which comprises: a pillow body, the interior of said pillow body defining an opening; an elongated rigid member positioned within said opening; means frictionally and pivotally connecting said interior of the pillow body to said rigid member; said rigid member being located in an eccentric pillow axis, thereby providing an eccentric pivotal axis for said pillow; said frictionally connecting means and said rigid member cooperating to enable said pillow to be pivoted about said eccentric axis solely by manipulation of said pillow; a support member extending downwardly directly from said rigid member and adapted for connection to said seat backrest; said pillow body defining a slot to enable said pillow body to be pivoted with respect to said support member.

6. A headrest as described in claim 5 including a backrest having a sleeve for receiving said support member; means cooperating with said support member for raising and lowering said pillow with respect to said seat backrest, said means for raising and lowering said pillow including a frictional clamp within said sleeve in frictional engagement with said support member.

headrest is adjustable solely by manipulation of the pillow body.

A vertical supporting member 54 is connected to the rigid tube and extends downward into a sleeve in the backrest 30. Frictional clamps 58 within the sleeve press against the vertical support member, thus holding the headrest in position.

## II. PRIOR ART

Defendants argue that claims 5 and 6 are invalid due to anticipation and/or obviousness. Defendants rely on four patents, each issued at least one year prior to the filing of the Stoller patent. Only one of these patents, Terracini, was cited during the prosecution of the Stoller patent. Other patents cited during the prosecution are not significant to our analysis. The pertinent portions of these four patents are described below.

### A. *Golden Patent*

The Golden patent, No. 2,985,228, was issued May 23, 1961. The patent discloses a mechanism for adjusting and locking a chair headrest in a chosen position, with a specific application to dental chairs. As shown in Appendix 2, the headrest 40 contains a rigid member 180 within an opening. A clamp 182 is adjusted using a handle 186 to engage or disengage the rigid member and lock the headrest in position. A vertical supporting member 170 extends downward and is connected to the seat backrest 28. There is also a slot 172 in the base of the headrest to enable the headrest to be pivoted with respect to the vertical support member. The vertical position of the headrest is changed by pulling another handle 236 out, moving the handle with its associated mechanism up or down and releasing the handle. A latch pin 242 then enters a hole in the latch strip 240 to lock the vertical position. The fore and aft movement of the headrest is also controlled by this handle.

### B. *Lawson Patent*

The Lawson patent, No. 3,159,427, was issued on December 1, 1964, and pertinent portions are shown in Appendix 3. Lawson discloses an adjustable headrest and an associated seat for an automobile. Within an opening in the headrest 30 is a pivot pin 45, bracket assembly 32, and the top of the headrest supporting stem, 42–44, 48–51. The headrest may be pivoted about the axis of the pivot pin. Spring-pressed balls 55–56, which are housed in cylinders 53–54 in the headrest supporting stem, are pressed against detent 47 in the bracket sidewalls, thus holding the headrest in position. The vertical support member 20, 22, 24 extends downward through an "open area" and connects to the seat backrest A. The headrest can be raised or lowered and is held in its vertical position by another spring-pressed ball (not shown) forced against detents 21 in the vertical support member.

### C. *Redfield Patent*

Issued on January 25, 1966, the Redfield patent, No. 3,231,308, describes an adjustable headrest for barber chairs. As shown in Appendix 4, Redfield discloses a headrest 13 containing a cross-bar 46 within the headrest. The cross-bar is attached to a vertical support member 14 with a bolt 31 placed through a cylindrical-shaped opening 30. The headrest is able to pivot to accommodate minor movements of the chair's occupant. The vertical support member is attached to the top 11 or back 12 of the seat and is passed between a key or bracket 20 and key cover 21. The headrest can be raised or lowered by loosening and then tightening the knob 22. Once this knob is tightened, vertical and pivotal movement of the vertical support member with respect to the chair is precluded.

### D. *Terracini Patent*

The Terracini patent, No. 3,223,447, was issued on December 14, 1965, and describes a backrest attachment for automobile seats. As shown in Appendix 5, Terracini discloses a sleeve member 12 which clamps two vertical rods (one from the backrest frame 2 and one from the headrest 11).

## III. PROPRIETY OF SUMMARY JUDGMENT

▮ Plaintiffs argue that defendants' motion for summary judgment should be

denied because summary judgment is inappropriate in patent cases due to complex issues. Plaintiffs further argue that summary judgment denies a party the right to have a jury decide contested facts. Plaintiffs' arguments have no merit.

The Federal Circuit has repeatedly stated that a party is entitled to summary judgment in a patent case "where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Howes v. Medical Components, Inc.*, 814 F.2d 638, 643, 2 U.S.P.Q.2d 1271, 1273 (Fed.Cir.1987); *Moeller v. Ionetics, Inc.*, 794 F.2d 653, 656, 229 U.S.P.Q. 992, 994 (Fed.Cir.1986); *D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1573, 225 U.S.P.Q. 236, 238 (Fed.Cir.1985); *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835, 221 U.S.P.Q. 561, 564 (Fed.Cir.1984); *Chore–Time Equipment, Inc. v. Cumberland Corp.*, 713 F.2d 774, 778–79, 218 U.S.P.Q. 673, 675 (Fed.Cir. 1983). *See Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1420, 7 U.S.P. Q.2d 1158, 1160 (Fed.Cir.1988). We do note, however, that doubts about whether there is a genuine issue of material fact must be resolved in favor of the party opposing the summary judgment motion. *Howes*, 814 F.2d at 643, 2 U.S.P.Q.2d at 1273. Further, where there are no genuine issues of material fact, there are no facts for a jury to decide and, consequently, summary judgment does not deny a party a right to a jury trial. *Constant v. Advanced Micro–Devices, Inc.*, 848 F.2d 1560, 1567, 7 U.S.P.Q.2d 1057, 1061, *cert. denied*, —— U.S. ——, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988).

## IV. VALIDITY OF THE STOLLER PATENT

### A. *Burden of Proof*

A patent is presumed valid and the party claiming invalidity has the burden of proof by clear and convincing evidence. *Uniroyal, Inc. v. Rudkin–Wiley Corp.*, 837 F.2d 1044, 1050, 5 U.S.P.Q.2d 1434, 1438 (Fed. Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988); *Verdegaal Bros., Inc. v. Union Oil Co.*, 814 F.2d 628, 631, 2 U.S.P.Q.2d 1051, 1052–53 (Fed.Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987); *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360, 220 U.S.P.Q. 763, 771 (Fed.Cir.), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984).

The parties disagree on the effect of the uncited prior art on the burden of proving patent invalidity. Citing *Panduit Corp. v. Burndy Corp.*, 517 F.2d 535, 538 n. 2, 186 U.S.P.Q. 75, 77 n. 2 (7th Cir.), *cert. denied*, 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed. 2d 304 (1975), *Uarco, Inc. v. Moore Business Forms, Inc.*, 440 F.2d 580, 585, 169 U.S.P.Q. 263, 267 (7th Cir.), *cert. denied*, 404 U.S. 873, 92 S.Ct. 91, 30 L.Ed.2d 117 (1971), and other cases, plaintiffs claim an "ancillary extension" of the presumption of validity of a patent over uncited prior art which is found in the same classes or subclasses searched by the examiner. The Federal Circuit has stated that it is "pointless" to argue whether the examiner is presumed to have looked at uncited prior art. The important determination is whether the uncited prior art is more pertinent than the prior art considered by the examiner. *Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.*, 730 F.2d 1452, 1459–60, 221 U.S.P.Q. 481, 486–87 (Fed.Cir.1984). However, the challenger's burden of proof is not reduced by showing that the uncited prior art is more relevant than the cited prior art. Where the challenger makes such a showing, proving invalidity is easier. *Uniroyal*, 837 F.2d at 1050, 5 U.S.P.Q.2d at 1438. *See American Hoist*, 725 F.2d at 1360, 220 U.S.P.Q. at 771 ("[such] evidence may, therefore, carry more weight and go further toward sustaining the attacker's unchanging burden").

The only expert evidence in the record concerning whether the uncited prior art is more pertinent than the cited prior art is the "declaration of Casmir A. Nunberg," the former patent examiner for the Stoller patent. Mr. Nunberg states that both the Golden patent and the Lawson patent are more pertinent than any prior art cited during his examination. He makes no such

assertion concerning the Redfield patent. Plaintiffs have introduced no evidence to the contrary. However, we do not find that defendants have thereby necessarily shown an absence of a genuine issue of material fact on the question of pertinence of the uncited prior art. Mr. Nunberg's declaration expresses his opinion; others may differ. Nevertheless, if an examination of that prior art discloses that the Stoller patent clearly reads on that prior art, or is obvious in view of the prior art, the defendants would meet their burden of showing invalidity.

### B. *Anticipation*

■ To show anticipation defendants must prove that every element in a challenged claim is described expressly or inherently in a single prior art reference. *Constant,* 848 F.2d at 1570, 7 U.S.P.Q.2d at 1064; *Verdegaal Bros.,* 814 F.2d at 631, 2 U.S.P.Q.2d at 1053; *Kalman v. Kimberly–Clark Corp.,* 713 F.2d 760, 771, 218 U.S.P.Q. 781, 789 (Fed.Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984). To decide anticipation we must construe the claims of the Stoller patent. This is a question of law. *Howes,* 814 F.2d at 643, 2 U.S.P.Q.2d at 1273; *Moeller,* 794 F.2d at 656, 229 U.S.P.Q. at 994; *McGill, Inc. v. John Zink & Co.,* 736 F.2d 666, 671, 221 U.S.P.Q. 944, 948 (Fed.Cir.), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 514, 83 L.Ed.2d 404 (1984). Because the Stoller patent and the prior art can be readily compared from the claims, drawings and specifications, no expert testimony is necessary to construe these claims. *See Chore–Time,* 713 F.2d at 779, 218 U.S.P.Q. at 673.

■ Plaintiffs argue that claims 5 and 6 should be interpreted as limited by the features of the specific embodiments disclosed in the specification and drawings. With these limitations[3] plaintiffs contend that the claims avoid anticipation. We do not agree that plaintiffs' claims are so limited. The claims, not the specification, define the bounds of the invention. *Uniroy-*

*al,* 837 F.2d at 1053, 5 U.S.P.Q.2d at 1441. Consequently, limitations outside the claims will generally not limit the claims. *Constant,* 848 F.2d at 1571, 7 U.S.P.Q.2d at 1064; *Loctite Corp. v. Ultraseal, Ltd.,* 781 F.2d 861, 867, 228 U.S.P.Q. 90, 93 (Fed.Cir. 1985).

We think the recent Federal Circuit *Constant* decision clearly shows why plaintiffs are incorrect. In *Constant,* the claim of the *Constant* patent included random access memory (RAM) in a digital signal processor. *Constant,* 848 F.2d at 1569–70, 7 U.S.P.Q.2d at 1063. The prior art references used magnetic core memories (one kind of RAM) while the specification disclosed a " 'semi-conductor RAM with $\log_2 n$ address lines connected the RAM through a decoder.' " *Constant* also attempted to read into the claims other limitations found only in the specification. *Id.* at 1570–71, 7 U.S. P.Q.2d at 1064–65. The court, however, rejected the limitations, stating:

> Although the specification may aid the court in interpreting the meaning of disputed language in the claims, particular examples appearing in the specification will generally not be read into the claims.

*Id.* at 1571, 7 U.S.P.Q.2d at 1064. The *Constant* court also found no explicit or implicit definition of the term RAM in the specification. *Id.* We also find no support for plaintiffs' interpretation of the Stoller claims. The features disclosed in n. 3 *supra* do not appear in the claims, only in the drawings and specification. Neither do we find any explicit or implicit definitions which would allow us to read those limitations into the claims.

### 1. *Golden Patent*

We believe that defendants have shown, by clear and convincing evidence, that Stoller claim 5, but not claim 6, was anticipated by Golden.

#### a. Claim 5

■ We find no genuine issue of material fact relating to claim 5. Claim 5 of Stoller states in part:

> nite number of positions (to avoid Lawson); (c) the headrest must be adjustable from any vertical position and need not be raised first (to avoid Lawson).

---

3. Plaintiffs contend the following limitations apply: (a) no "outstanding projections" such as handles are allowed (to avoid Golden); (b) the headrest is continuously adjustable in an infi-

said frictionally connecting means and said rigid member cooperating to enable said pillow to be pivoted about said eccentric axis *solely by manipulation of said pillow....*

(Emphasis added.) However, the asserted frictionally connecting means in Golden—a screw-adjustable clamp—is explicitly disclosed as a locking device.

[B]y rotating the handle 186 to rotate the screw 184, the clamp 182 may be caused to engage or disengage the shaft 180 to lock the head rest 40 in a predetermined angular, fore and aft position about the shaft, or to release it for movement to another position.

Golden patent, column 3, lines 14–18. We believe Golden can reasonably be read to require the use of the handle to adjust the headrest and thus not explicitly disclose a headrest adjustable solely by manipulation of that headrest.

Defendants appear to argue that Golden inherently discloses the element of position adjustment solely by headrest manipulation. That is, once the clamp is adjusted to the correct level, friction will hold the headrest in place and allow its manipulation when required. This is the inherency doctrine of anticipation where even if an element is absent from the prior art reference, that element flows naturally from the disclosure. *Ethyl Molded Prods. Co. v. Betts Package, Inc.*, 9 U.S.P.Q.2d 1001, 1032, 1988 WL 122168 (E.D.Ky. Sept. 2, 1988); *Hughes Aircraft Co. v. United States*, 15 Cl.Ct. 267, 271, 8 U.S.P.Q.2d 1580, 1583 (1988). *See Verdegaal Bros.*, 814 F.2d at 633, 2 U.S.P.Q.2d at 1053; *In re King*, 801 F.2d 1324, 1326, 231 U.S.P.Q. 136, 138 (Fed.Cir.1986). We believe it is clear, as a matter of "scientific fact," that Golden inherently discloses a headrest whose pivotal position can be adjusted solely by manipulation of the headrest when the clamp is properly adjusted. The friction force exerted by the clamp 182 on the tubular shaft 180 exists whether or not Golden recognized this. *Cf. Verdegaal Bros.*, 814 F.2d at 633, 2 U.S.P.Q.2d at 1054 ("Even assuming Stoller [different inventory than in instant case] did not recognize that the heel of his process functioned as a heat sink, that property was inherently possessed by the heel in his disclosed process...."). Because we find that Golden inherently discloses the adjustment of the headrest by headrest manipulation alone, and all other elements of Stoller claim 5 are disclosed by Golden, defendants have clearly shown that claim 5 is anticipated in Golden and invalid.

#### b. Claim 6

■ Stoller's claim 6 specifies:

means for raising and lowering [the] pillow including a frictional clamp ... in frictional engagement with [the vertical] support member.

In Golden the headrest is raised or lowered by a clamping device, using a latch pin being moved in or out of holes in a latch strip. We do not believe that this device can reasonably be interpreted as a frictional clamp. At the very least, a genuine issue of material fact exists as to whether Golden discloses a frictional clamp. Consequently, for the purposes of this motion we find claim 6 not anticipated by Golden.

#### 2. *Lawson Patent*

#### a. Claim 5

Plaintiffs argue that Lawson does not anticipate claim 5 because unlike the embodiment described in Stoller Lawson does not provide for a continuous range of headrest positions and is not adjustable in its unextended position. As we stated *supra*, we can not read these limitations into the claims. However, part of claim 5 is written in a "means plus function" format and the analysis is somewhat different when construing such claims. *See E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433–34, 7 U.S.P.Q.2d 1129, 1132 (Fed.Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 542, 102 L.Ed.2d 572 (1988). *See also Snellman v. Ricoh Co.*, 862 F.2d 283, 288, 8 U.S.P.Q.2d 1996, 2000 (Fed.Cir.1988) ("specification must be looked to to determine the means claimed to perform the function").

■ Although a claim containing a "means plus function" element is not limit-

ed to the specific means disclosed in a specification, *D.M.I.*, 755 F.2d at 1574, 225 U.S.P.Q. at 238, the claim only covers the "disclosed structure and equivalence thereof." *Palumbo v. Don–Joy Co.*, 762 F.2d 969, 974, 226 U.S.P.Q. 5, 8 (Fed.Cir.1985); 35 U.S.C. § 112, ¶ 6. Thus, to anticipate a claim with a "means plus function" element, an element of the prior art must perform the same function as stated in the claim. *RCA Corp. v. Applied Digital Data Systems, Inc.*, 730 F.2d 1440, 1444–45 & n. 5, 221 U.S.P.Q. 385, 388–89 & n. 5 (Fed.Cir.), *cert. dismissed*, 468 U.S. 1228, 105 S.Ct. 32, 82 L.Ed.2d 923 (1984). In addition, the disclosed element in the prior art must be identical or the equivalent of the element disclosed in the patent. *See Constant*, 848 F.2d at 1571, 7 U.S.P.Q.2d at 1065. *See also Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934, 4 U.S.P.Q.2d 1737, 1739 (Fed.Cir.1987) (*en banc*) (stating two-part test in infringement case), *cert. denied*, —— U.S. ——, ——, 108 S.Ct. 1226, 1474, 99 L.Ed.2d 426, 703 (1988).

██ Lawson describes a means, the spring-pressed balls 55–56, which are located in the headrest supporting stem 20, 42–44, 48–51, coacting with the detents 47 in the sidewalls of the bracket 34–35, which frictionally and pivotally connect the pillow body interior to the rigid member, the pivot pin 45.[4] Defendants claim that this is the equivalent of the means described in Stoller. While we believe that the elements in Lawson and Stoller perform the same function, we also believe that a factual question exists as to whether the Lawson disclosure is the equivalent of the elements disclosed in Stoller.[5] *See Palumbo*, 762 F.2d at 975,

226 U.S.P.Q. at 8–9; *D.M.I.*, 755 F.2d at 1575, 225 U.S.P.Q. at 239.

b. Claim 6

Lawson uses spring-pressed balls against detents in the vertical support member to allow the raising and lowering of the headrest. Stoller requires a "frictional clamp . . . in frictional engagement with [the vertical] support member." Although it could be argued that Lawson's ball/detent system is not a frictional clamp, we do not need to resolve this issue because of our finding, *infra*, that claim 6 is anticipated by Terracini.

3. *Redfield Patent*

a. Claim 5

██ Plaintiffs argue that the bolt 31/aperture 30 assembly disclosed in Redfield is not a frictional connecting means. Redfield discloses a headrest that continues to pivot in response to minor movements of the chair's occupant. Defendants argue that friction may be increased by tightening nut 44 on the bolt. We do not believe this is so clear as to support an inherent disclosure of frictional and pivotal means connecting the pillow body with the rigid member in Redfield. Although undoubtedly friction acts between the bolt and the aperture, we believe there is a genuine issue of material fact as to whether the bolt/aperture assembly performs the same function as the Stoller frictional connecting means. Even if both structures perform the same function, we believe there is also a factual question as to whether the bolt-aperture assembly is the equivalent of the clamp structure disclosed in Stoller. We also note that in his declaration Mr. Nun-

---

4. In the text of their briefs, defendants identify the pivot pin 45 as being the rigid member in question. However, in Ford's color diagrams attached to their brief, Ford colors the headrest support stem and in one place the inwardly turned flanges of the bracket device with the color (orange) used to identify the rigid member. MBNA correctly colors only the pivot pin orange. Because MBNA extensively briefed anticipation by Lawson, and Ford barely briefed this issue while joining in MBNA's motion, we ignore the apparent conflicts in Ford's brief.

5. The only evidence on equivalency is contained in Mr. Nunberg's declaration. Mr. Nunberg states: "[T]he friction clamp arrangement of Stoller and the ball detent arrangement of Lawson were fully equivalent in my experience as a patent examiner in 1966–68, and one of ordinary skill in the art in 1966 would have routinely substituted or interchanged one for the other." Declaration of Casmir A. Nunberg, p. 6, ¶ 11. This is of course Mr. Nunberg's opinion.

berg did not state that Redfield anticipates Stoller.

### b. Claim 6

Claim 6 requires that the backrest have a sleeve for receiving the vertical support member. Defendants argue that the key 20 and key cover 21 disclosed in Redfield constitute such a sleeve. We believe that a strong argument can be made that this structure is not a sleeve. However, because we find claim 6 anticipated by Terracini, we need not decide this question.

### 4. *Terracini Patent*

■ Defendants argue that claim 6 is anticipated by Terracini. The Terracini patent discloses a sleeve member 12 which receives a vertical support member 11 from the headrest. The sleeve can be tightened by a clamping screw 16, 17 and a nut 18. When tightened with sufficient force the sleeve member receptacle 14 acts as a frictional clamp.

Although the specification and drawings in Stoller do not include a handle, such as disclosed in Terracini (19), to apply the frictional force, we have stated previously that limitations not stated in the claims will not be read into the claims. Stoller's claim 6 is not limited to no "outstanding projections" and therefore it is of no consequence that Terracini uses a handle with the frictional clamp. We find that no factual issue exists relating to claim 6 and that Terracini discloses every element of that claim. Consequently, we hold that claim 6 is anticipated by Terracini and invalid.

### C. *Obviousness*

Defendants also challenge the Stoller patent arguing that claims 5 and 6 are obvious in view of prior art and thus invalid under 35 U.S.C. § 103. A conclusion of obviousness follows directly from our finding of anticipation of both claims. *See RCA*, 730 F.2d at 1446, 221 U.S.P.Q. at 389. Consequently, we need not analyze the factors stated in *Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–694, 15 L.Ed.2d 545, 148 U.S.P.Q. 459, 467 (1966), to determine obviousness.

## V. CONCLUSION

Because we find claim 5 anticipated by Golden and claim 6 anticipated by Terracini, we hold that both claims are invalid and grant defendants' motion to dismiss.

APPENDIX 1

April 21, 1970          H. B. STOLLER          3,507,538

HEADREST

Filed Dec. 4, 1967

INVENTOR
Hulan B. Stoller
by Dressler, Goldsmith, Clement
and Gordon     Attorneys

A

May 23, 1961

S. S. GOLDEN

2,985,228

CHAIR CONSTRUCTIONS

Filed June 20, 1956

2 Sheets—Sheet 1

*Fig. 1.*

*Fig. 2.*

INVENTOR.
SANFORD S. GOLDEN

BY HIS ATTORNEYS.
HARRIS, KIECH, FOSTER & HARRIS

APPENDIX 3

Dec. 1, 1964      G. S. LAWSON      3,159,427

HEAD REST ASSEMBLY

Filed Nov. 19, 1962      2 Sheets—Sheet 2

INVENTOR.

GEORGE S. LAWSON

BY

*Carl J. Barku*

ATTORNEY

1462

APPENDIX 4

Jan. 25, 1966          C. L. REDFIELD          3,231,308

ADJUSTABLE HEADREST FOR BARBER CHAIRS

Filed Dec. 4, 1963                    2 Sheets-Sheet 1

INVENTOR.
CHARLES L. REDFIELD
BY

ATTORNEYS

Jan. 25, 1966      C. L. REDFIELD      3,231,308

ADJUSTABLE HEADREST FOR BARBER CHAIRS

Filed Dec. 4, 1963               2 Sheets-Sheet 2

Fig. 2

INVENTOR.

CHARLES L. REDFIELD

BY

ATTORNEYS

1464

## APPENDIX 5

Dec. 14, 1965          V. TERRACINI          3,223,447

BACK REST ATTACHMENT FOR MOTOR VEHICLE SEATS

Filed Oct. 20. 1964

INVENTOR

Vittorio Terracini

BY McGlew and Toren

ATTORNEYS